IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| UNITED STATES OF AMERICA, | Case No. CR-10-3-BLG-JDS |
|---|---|
| Plaintiff, | MEMORANDUM OPINION |
| vs. | |
| RICHARD BRUCE SANDERS, | |
| Defendant. | |

## Introduction

On November 12, 2010, the Court issued an Order denying
Defendant Richard Bruce Sander's ("Defendant") Amended Motion to
Suppress[1]. *Doc. No. 30.* Defendant is charged with Felon in Possession
of Firearms and Felon in Possession of Ammunition. *Doc. No. 1.* On
September 29, 2010, the Court held a lengthy hearing on Defendant's
Motion.   The Court heard testimony from Attorney Scott Hagen, Mark
Ott, Defendant and Deputy Shawn Lesnik (Deputy Lesnik) *See* Transcript

---

[1] Defendant's initial Motion to Suppress [Doc. No. 23], filed by a different attorney,
challenged the Government's anticipated use of the "plain view" exception when law enforcement
had probable cause to include firearms in the warrant but failed to do so. However, this argument
appears to have been abandoned and will not be considered here.

of Suppression Hearing (Tr.) *Doc. No. 69.* Subsequent to the hearing, the Court ordered additional briefing on issues germane to Defendant's motion which may have arose. Defendant advances three theories as to why the evidence should be suppressed. First, Defendant argues that the truthfulness of the affidavit, as applied to *Illinois v. Gates* and *Franks v. Delaware*, renders the underlying search warrant invalid. Second, that the search warrant violated Defendant's Six Amendment right to assist his counsel in his defense. And, third that the "good faith exception" does not apply to the exclusionary rule in this case.

## Factual Summary

On April 4, 2008 Deputy Lesnik submitted the Affidavit of Probable Cause and Application for Search Warrant (APC) to State District Court Judge Spaulding seeking a search warrant for Defendant's residence. *Doc. No. 38-1.* The APC was based on an alleged violation of Mont. Code. Ann. § 45-7-206 which provides as follows:

> (1) A person commits the offense of tampering with witnesses and informants if, believing that an official proceeding or investigation is pending or about to be instituted, the person purposely or knowingly attempts to induce or otherwise cause a witness or informant to:

(a) testify or inform falsely;

Mont. Code. Ann § 45-7-206 (2007).

The APC submitted to Judge Spaulding in this case concerns

Morgan Kamelin's (Kamelin) anticipated testimony about a separate

incident involving Defendant's arrest on state charges of unlawful

restraint and assault (state charges). Kamelin rented a residential unit

from Defendant and was a potential witness to the events surrounding the

state charges. The APC states that Kamelin presented an unsigned

affidavit (Unsigned Affidavit) to the Mussellshell County Attorney. *Doc.*

*No. 38-1 ¶ 3.* Kamelin stated that she was approached by another tenant

of Defendant, Rae Ott (Ott). *Id.* Ott presented Kamelin with the

Unsigned Affidavit concerning the events surrounding the state charges.

The relevant portion of the Unsigned Affidavit stated:

> That a shed was removed from his property and I was very ill
> and under the effects of prescription drugs **and do not**
> **remember** any confrontation between Mr. Richard Sanders
> and those that took the shed.

(Emphasis supplied) *Doc. No. 70-1.*

Ott reportedly told Kamelin that if she did not sign the affidavit

that Defendant would subpoena her. *Doc. No. 38-1 ¶ 3.* Deputy Lesnik

3

testified that Kamelin told him that the Unsigned Affidavit was mostly lies. *Tr. 128.* On March 24, 2008, Deputy Lesnik conducted a videotaped interview with Kamelin. *Tr. 100.* Deputy Lesnik concluded that Kamelin remembered the events surrounding the state charges and determined that her account was corroborated by his own recollection and that of another witness, Mr. Howell. *Tr. 122-123.* Defendant freely admits that he prepared the affidavit for Kamelin's signature. *Tr. 51.*

Kamelin further stated that she knew both Ott and Defendant had computers which could have produced the unsigned affidavit. *Doc. 38-1* ¶ 3. The APC sought a warrant to search Defendant's residence for computers and related material concerning possible witness tampering charges. *Id.* at ¶¶ 2, 3.

On April 4, 2008, Judge Spaulding found probable cause to search Defendant's residence for computers and computer related memory devices. *Doc. No. 38-2.*

The search warrant was executed on April 10, 2008 by the Musselshell County Sheriffs Department together with assistance from the Bureau of Alcohol Tobacco and Firearms (ATF). Upon execution of the

warrant, the Sheriffs presented the warrant to Defendant and entered the residence while the ATF agents remained outside. While performing the search, law enforcement officers observed a loaded 9MM magazine on a night stand in a bedroom. Law enforcement also observed other firearms and firearms parts. A second warrant was applied for and received concerning firearms. Upon a further search the officers found multiple firearms, firearms parts and thousands of rounds of ammunition. Defendant seeks suppression of all the fruits of that search.

## Analysis

Defendant first argues that the Unsigned Affidavit was true and thus the APC did not establish probable cause under *Illinois v. Gates*, 462 U.S. 213 (1983). Defendant bases his argument on Deputy Lesnik's failure to corroborate and investigate the details provided in the Unsigned Affidavit. In support, Defendant offered testimony that called into question Kamelin's memory and reliability. Further, Defendant points out that Deputy Lesnik could easily have questioned Rae and Mark Ott and ascertained that Defendant prepared the Unsigned Affidavit and that it was true. Defendant suggests that rather than investigate the

truthfulness of the Unsigned Affidavit Deputy Lesnik submitted the APC as a pretext to search for firearms.

The Government counters that Defendant's attempt to establish a defense to a witness tampering charge is not relevant to the question of whether the APC was supported by probable cause.

The United States Supreme Court determined that, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Illinois v. Gates*, 462 U.S. 213 at 236. Rather, deference should be accorded to a magistrate's decision. *United States v. Leon*, 468 U.S. 897, 914 (1984). Nevertheless, "[s]uppression ... remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

The Court agrees with the Government that Defendant's attempt at establishing a defense to witness tampering is irrelevant to the present inquiry. Indeed, the proper standard in determining probable cause is

the probability of criminal activity rather than a *prima facie* showing. *See Illinois v. Gates*, 462 U.S. 213, 235. Similarly, Defendant's Sixth Amendment right to assist counsel in his defense may indeed be an affirmative defense to a witness tampering charge but is irrelevant to the suppression inquiry.

Therefore, the remaining issue for the Court regarding Defendant's challenge to the APC is whether the affiant knowingly or recklessly included false information in his affidavit or whether the affidavit contained deliberate or reckless omissions of facts. See *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.1985). A "defendant must prove by a preponderance of the evidence that there was a knowing and intentional falsehood or a reckless disregard for the truth, and that the challenged statement was essential to the finding of probable cause." *U.S. v. Dozier*, 844 F.2d 701, 705 (9th Cir.1988) (citing *Franks*, 438 U.S. at 171-72).

The Court finds Defendant has not met his burden. Defendant's argument boils down to a challenge of Kamelin's statement that the Unsigned Affidavit contained lies. The record reflects that Kamelin's account of the events surrounding the state charges were corroborated by

7

Mr. Howell and Deputy Lesnik's recollections. Regardless, the central issue for Deputy Lesnik was whether Kamelin could remember the events which would directly contradict the Unsigned Affidavit. Indeed, only Ms. Kamlelin would know whether she remembered or not. No amount of investigation beyond Kamelin herself would be necessary. Defendant's subjective belief that she could not remember is of no consequence. *See Tr. 54-55.* After an *in camera* review of the videotaped interview of Kamelin, the Court concludes that in fact she could remember, which renders the Unsigned Affidavit suspect enough to establish probable cause. The Court finds that Deputy Lesnik's investigation and statements in the application for a search warrant present neither knowingly or recklessly included false information, nor a reckless omission[2]. Defendant has failed to prove by preponderance of the evidence that there was a knowing and intentional falsehood or a reckless disregard for the truth present in the APC.

Even assuming that Deputy Lesnik was somehow negligent in his

---

[2] The Court agrees with the Government that even assuming Deputy Lesnik had a duty to investigate further or include information about Kamelin's mental health, that failure would reflect negligence rather than the reckless disregard necessary to require suppression.

investigation of the Unsigned Affidavit, the Court finds he acted in good faith. The United States Supreme Court created a good faith exception to the Fourth Amendment's exclusionary rule based upon the objective reasonableness of the officers actions when executing a warrant. See *Leon*, 468 U.S. 897, 922-923 (1984). The *Leon* Court explained that "[i]t is [also] necessary to consider the objective reasonableness, ... of the officers who originally obtained [the warrant] or who provided information material to the probable-cause determination." *Id.* at 468 U.S. 923, n. 24. Therefore, the good faith inquiry should extended to Deputy Lesnik as well.

In this case, Defendant argues that Deputy Lesnik made no efforts to investigate or corroborate that the Unsigned Affidavit contained lies. Further, Defendant asserts that Deputy Lesnik chose to ignore Kamelin's mental illness. As noted above, the query before Deputy Lesnik was limited to Kamelin's memory of the events surrounding the state charges. The record reflects that Deputy Lesnik interviewed Kamelin and corroborated her testimony with two other witnesses and his own recollections. *Tr. 120-123.* Further, when asked about Kamelin's memory,

Deputy Lesnik testified as follows:

> Q. When you say she gave a good statement, what
> do you mean by that?
>
> A. She remembered the events. She was clear about the
> events. She was accurate. She wanted to be accurate.
> And I don't think that she embellished anything. She
> didn't embellish anything that I was a witness to.

*Tr. 123.*

Having undertaken an independent review of the videotaped

interview, the Court notes that Kamelin appears to be a competent

witness.   Deputy Lesnik testified that he was not aware of Kamelin's

medical history and that she stated that she was not on medication the

day of the interview. *Tr. 98, 99.* While Deputy Lesnik may have

become aware that Kamelin had a "meltdown" and some history of

mental issues in her past, he is not a psychiatrist and this knowledge

alone would not defeat his objective reasonable reliance on her

statement.

## Conclusion

For the reasons discussed herein, the Court finds that Defendant

failed to prove by a preponderance of the evidence that there was a

knowing and intentional falsehood or a reckless disregard for the truth present in the APC sufficient to warrant suppression in this case.

DATED this 18th day of November, 2010.

/s/ Jack D. Shanstrom
JACK D. SHANSTROM
SENIOR U.S. DISTRICT JUDGE